UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Mara Schwartz, | ) Civil Action No.: 8:20-CV-_____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Medtronic Minimed, Inc., Minimed | ) |
| Distribution Corp., Medtronic, Inc., | ) **COMPLAINT** |
| Medtronic USA, Inc., Becton Dickinson and | ) **JURY TRIAL DEMANDED** |
| Company & John Doe Defendants 1-5, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

TO: Medtronic Minimed, Inc., Minimed Distribution Corp., Medtronic, Inc., Medtronic USA, Inc., Becton Dickinson and Company & John Doe Defendants 1-5:

Plaintiff, complaining of Defendants herein, would allege and show to the Court that:

## JURISDICTION AND VENUE

1. Plaintiff is a citizen and resident of the County of Greenwood, State of South Carolina.

2. Defendant Medtronic Minimed, Inc., is a foreign corporation organized and existing under the laws of Delaware, with its principal place of business at 18000 Devonshire St., Northridge, California 91325. At all times relevant to this Complaint, this Defendant conducted business in the State of South Carolina, but does not maintain a registered agent for service of process in South Carolina. This Defendant may be served with process upon its registered agent: CT Corporation System, 818 West 7th Street, Los Angeles, CA 90017.

1

3.      Defendant MiniMed Distribution Corp., is a foreign corporation organized and existing under the laws of Delaware, with its principal place of business at 18000 Devonshire Street, Northridge, California 91325.  At all times relevant to this Complaint, this Defendant conducted business in the State of South Carolina.  This Defendant may be served with process via service upon its registered agent: Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

4.      Defendant Medtronic, Inc., is a foreign corporation organized and existing under the law of Minnesota, with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.  At all times relevant to this Complaint, this Defendant conducted business in the State of South Carolina.  This Defendant can be served with process via service upon its registered agent: Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

5.      Defendant Medtronic USA, Inc., is a foreign corporation organized and existing under the law of Minnesota, with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.  At all times relevant to this Complaint, this Defendant conducted business in the State of South Carolina.  This Defendant can be served with process via service upon its registered agent: Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

6.      Defendant Becton Dickinson and Company, is a foreign corporation organized and existing under the laws of New Jersey, with its principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey 07417.  At all times relevant to this Complaint, this Defendant conducted business in the State of South Carolina.  This Defendant can be served with process via service upon its registered agent: CT Corporation Systems, 2 Office Park, Suite 103, Columbia, South Carolina 29223.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the Defendants because they collectively regularly conduct business in South Carolina and have sufficient minimum contacts in South Carolina. Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc., MiniMed Distribution Corp., and Becton Dickinson and Company intentionally availed themselves of this jurisdiction by marketing and selling products and services and accepting and processing payments for those products and services within South Carolina. Defendants further availed themselves of jurisdiction in South Carolina by designing, manufacturing, testing, packaging, marketing, distributing, labeling and/or placing said products in the stream of commerce with the knowledge that said products would reach South Carolina.

8. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interests and costs, and this case is between citizens of different states.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts and omissions giving rise to Plaintiff's claims occurred in the Greenwood District and/or because Becton Dickinson and Company and Medtronic are subject to this Court's jurisdiction with respect to this action.

10. The Plaintiff, Mara Schwartz, was injured as a result of the defective Becton Dickinson and Medtronic products at issue in this Complaint. The product failures and the proximately resulting injury occurred while she was in her home in Greenwood County, South Carolina, within the jurisdiction of the United States District Court for the District of South Carolina, Greenwood Division. Jurisdiction and venue are appropriate in this Court.

## FACTUAL ALLEGATIONS

11. On or around the 24th day of February, 2017, the Plaintiff, Mara Schwartz, was a healthy 49 year- old resident of Greenwood, South Carolina. She was employed as a registered nurse and diabetes education coordinator for a local hospital.

12. Ms. Schwartz was a Type I Diabetic and she used a Medtronic MiniMed Model 630G (MMT-1715) insulin pump to deliver the proper amount of insulin into her blood stream to treat her diabetes. Said MiniMed pump stored insulin, which was delivered from the pump to the Plaintiff's body through plastic tubes called "infusion sets," over several days as she needed it.

13. Mara Schwartz used Medtronic MiniMed Pro Set Infusion Sets to deliver insulin from the pump to her body.

14. On or about the night of February 24, 2017, at her home in Greenwood County, South Carolina, Mara Schwartz's pump was low on insulin. She followed the steps Medtronic indicated were necessary to properly fill a reservoir with more insulin, attach a new Pro Set infusion set, and restart her MiniMed insulin pump.

15. After Ms. Schwartz refilled her insulin pump on the night of February 24, 2017, her pump and/or infusion set malfunctioned and delivered her pump's entire reservoir of insulin to her body at one time, causing her to become hypoglycemic. Ms. Schwartz has a service dog who has been trained to detect when her blood sugar is low. When Ms. Schwartz's service dog alerted her, she checked her blood sugar and found it to be 36, at which point she drank some juice and ate some honey. She then lost consciousness and was in a diabetic coma for the remainder of the night. When she regained consciousness at 5:30 the next morning, she was disoriented and confused. Her movement was uncoordinated and her vision was impaired, causing her to determine she needed glucose

treatment. She was also bruised and in pain. She had bitten her tongue and had multiple lacerations, indicating that she had experienced hypoglycemic seizures while she was unconscious. This made taking in hypoglycemia treatment difficult. When her blood sugar started to rise and her vision returned, she discovered additional injuries to her arm. Medical examination indicated that she had sustained orthopaedic, neurological, and muscle injuries, as well as psychological trauma and emotional distress.

16. Upon information and belief, the Medtronic MiniMed pump and infusion set which over-dosed Ms. Schwartz malfunctioned as a result of defects that: (1) failed to allow the reservoir to properly seat within the pump and (2) allowed fluid to block the infusion set membrane during the priming, fill tubing process, which prevented the infusion set from working properly and causing an over-delivery of insulin.

17. The Medtronic MiniMed pump and infusion set at issue are both the subject of recalls. The component of the infusion set which Plaintiff had been utilizing was recalled by Defendant Becton Dickinson and Company on December 23, 2016. Becton Dickinson notified Medtronic, its sole customer, of a Class 2 recall on December 26, 2016. The set was subsequently recalled a second time by Medtronic and the FDA on September 10, 2017, due to the defective condition that overdosed Ms. Schwartz. Unfortunately, this was after her injury.

18. Medtronic notified customers of possible defects in the MiniMed Model 630G (MMT-1715) insulin pump on November 21, 2019. The FDA subsequently issued a Class 1 recall for all lot numbers of the Plaintiff's pump on February 7, 2020. Unfortunately, this was too late for Ms. Schwartz, who was injured on February 23, 2017.

## THE PRODUCTS

19. The Defendants designed, manufactured, marketed and distributed the MiniMed 630G (MMT01715) Insulin Pump and Pro Set Infusion Sets, which were marketed to deliver insulin to a person with diabetes in measured amounts. The MiniMed pump was manufactured with a retainer ring designed to lock the patient's insulin cartridge into place in the pump's reservoir compartment. Pro Set Infusion Sets consist of a membrane and disposable plastic tubes which transport insulin from the pump to the patient's body.

20. The Medtronic MiniMed 630G Pump and Pro Set Infusion Sets are used in conjunction with one another to help people with diabetes regulate their blood sugar by providing a constant source of insulin. They provide an alternative to daily injections of insulin the pump connects to flexible plastic tubing that delivers insulin to the body. Users set the pump to deliver insulin throughout the day. It can be programmed to release larger doses at meals or at times when blood sugar levels are too high.

21. Mara Schwartz had no way of knowing that the MiniMed Series 630G Pump and Pro Set Infusion Sets that she used on the night of the incident were defective in design, manufacture, and marketing, and that, even when used in conformance with Defendants' instructions, were prone to deliver incorrect and life threatening doses of insulin.

## THE COMPANIES

22. Medtronic is a global healthcare products company, with annual revenue in the billions of dollars. Medtronic touts its leadership in the medical device industry, specifically representing that it has 25 years of continuous leadership in diabetes device solutions that improve patients' lives. Medtronic claims to be passionate about diabetes care, with a highly trusted brand and a proven track record for advancing solutions. This claim is echoed in part of Medtronic's mission statement in which Medtronic vows to

"strive without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity and service."

23. In spite of Medtronic's stated mission, Medtronic MiniMed insulin pumps and infusion sets have been the subject of a myriad of problems and defects over the years. For example, in sharp contrast to Medtronic's Website, are statements from a June 1, 2009, letter from the United States Food and Drug Administration ("FDA") to William A. Hawkins, Medtronic's president and chief executive officer regarding Medtronic PR Operations Co., the firm where MiniMed pumps are manufactured. In criticizing Medtronic's manufacturing and reporting process, the FDA cited Medtronic for:

> Failure to report to the FDA no later than 30 calendar days after the day that you receive or otherwise become aware of information, from any source, that reasonably suggests that a device you have on the market: (1) may have caused or contributed to a death or serious injury; or (2) has malfunctioned and this device or a similar device that you market would be likely to cause or contribute to the death or serious injury, if the malfunction were to recur…

24. In contravention of applicable regulations, Medtronic has failed to report an incident involving a MiniMed insulin pump in which "device failure or malfunction may have contributed to or caused the user's hospitalization and the device's malfunction would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur."

25. The FDA also found fault with the personnel that Medtronic entrusted at its manufacturing facility in Puerto Rico when determining whether a Medtronic device was dangerous. Specifically, the FDA cited Medtronic for:

> Failure to have a person who is qualified to make a medical judgment reasonably conclude that a device did not cause or contribute to a death or serious injury, or that a malfunction would

7

>not be likely to cause or contribute to a death or serious injury, if it were to recur, as required by [United States Federal Law.] Personnel qualified to make a medical judgment include physicians, nurses, risk managers and biomedical engineers under [United States Federal Law.]

26. According to FDA Investigators, this plant had a wide range of problems that included lax testing of products for defects, improper record keeping, and employing someone with insufficient training as a medical expert to determine danger or defects. Said employee only had a high school diploma with some additional in-house training. In listing these and other violations, the FDA concluded that the problems may be symptomatic of serious problems in Medtronic's manufacturing process and its quality controls.

27. None of the cited violations reflect Medtronic's promise to strive "without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity, and service."

28. On or about June 29, 2009, these issues led to a Class 1 recall of many of the Defendants' insulin infusion sets labeled Paradigm Quick-Set Infusion Sets. Said recall included lots manufactured between 2007 and 2009. Approximately three million disposable infusion sets were recalled.

29. On or about June 7, 2013, Medtronic MiniMed Paradigm infusions sets were recalled via a Class 1 recall. The recall was issued "because of a potential safety issue that can occur if insulin or other fluids come in contact with the inside of the tubing connector. If this occurs it can temporarily block the vents that allow the pump to properly prime."

30. The 2013 recall admitted that "[t]his can result in too much or too little being delivered resulting in hypoglycemia or hyperglycemia which can be severe and lead to serious illness."

31. The 2013 recall was virtually identical to the 2017 recall with regard to the infusion set at issue in this case. The same problems – fluid causing a vent blockage – resulting in the same outcomes – over-delivery of insulin – are at issue in both recalls.

32. It is clear that Medtronic did not resolve the problem with their product that resulted in the 2013 recall. Medtronic marketed the subject infusion sets without fixing the problem, resulting in another recall for the same defect in 2017.

33. Unfortunately, past recalls and problems associated with Medtronic infusion sets did not result in Medtronic designing and marketing safer products for use by Mara Schwartz.

## THE CURRENT RECALL

34. On September 7, 2017, Medtronic issued an "Urgent Medical Device Recall" regarding Medtronic MiniMed Infusion Sets.

35. The Recall Notice states that "Medtronic has become aware of recent reports of potential over-delivery of insulin shortly after an infusion set change." Medtronic further notes that it has received reports of hypoglycemia requiring medical attention related to this issue, which Medtronic concedes can result in "hypoglycemia and in extreme cases, death."

36. The Recall Notice states that this problem is caused by fluid blocking the infusion set membrane during the priming/fill tubing process, which prevents the infusion set from working properly. The result can be fast delivery of multiple days' worth of insulin.

9

37. The Recall Notice also announces that Medtronic has an alternate infusion set design, which contains a "new and enhanced membrane material that significantly reduces the risk."

38. The Plaintiff would show unto the Court that prior to the Medtronic recall of September 2017, the Defendant Becton Dickinson and Company on December 23, 2016, issued a Class 2 recall for MiniMed Pro Sets, including Lot No. 6207537, citing a design defect. Said Lot specifically included Plaintiff's Pro Set Infusion Set and according to FDA Recall No. Z-1897-2017, Becton Dickinson and Company notified its sole customer, Medtronic, by email on December 26, 2016. Said recall further indicates that Becton Dickinson and Company recommended that Medtronic notify their customers of the situation. Plaintiff is informed and believes that each of the Defendants were aware or should have been aware of the defects and risks associated with their products, but proceeded with conscious indifference to the rights, safety and welfare of others.

39. As a result of the defective MiniMed Infusion Sets, Mara Schwartz received a large quantity of insulin, which resulted in severe hypoglycemia, diabetic coma, seizures and physical as well as mental/emotional injury.

40. On November 21, 2019, Medtronic also notified the FDA of a defect in its MiniMed 630G (MMT01715) Insulin Pump. The information supplied to the FDA prompted a Class 1 recall of all devices distributed between September 2016 and October 2019, which includes the Plaintiff's pump. According to Medtronic, defects in the locking retainer rings on Model 630G, prevent a patient's insulin reservoir from being properly seated within the pump when it is loaded.

41. The Plaintiff is now informed and believes that her pump likewise malfunctioned due to this defect resulting in the over-delivery of insulin. At the time of

her overdose in 2017, she notified Medtronic who request that she immediately return her pump, which was still under warranty, for testing and replacement.  When she did as instructed, she was informed that Medtronic found her pump to be was operating properly. Despite the fact Medtronic indicated there was no product malfunction, the Plaintiff was sent a new device.   It was not until after her injury and the recent recall for all lots, that Plaintiff was ever made aware of that this product was unreasonably dangerous and had contributed to her injury.

## CAUSES OF ACTION
## FOR A FIRST CAUSE OF ACTION – STRICT PRODUCT LIABILITY

42. The Plaintiff incorporates by reference and realleges each and every allegation in this Complaint the same as though specifically set forth herein.

43. The Plaintiff hereby asserts a design defect claim pursuant to the South Carolina Product Liability Statute §15-73-10 et seq. and other applicable South Carolina law.

44. At all times relevant to the Complaint, the Defendants were in the business of designing, manufacturing, marketing, testing, labeling, selling and/or distributing Medtronic Model 630G (MMT-1715) Insulin Pumps and MiniMed Infusion Sets.  The products at issue were defective and unreasonably dangerous at the time they left the hands of the respective Defendants.  Defendants placed their products into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design of the products.  The products reached the Plaintiff in the same condition they were in at the time they left the Defendants and were placed into the stream of commerce.

45. Defendants' products were unreasonably and dangerously defective beyond the extent contemplated by ordinary users with ordinary knowledge regarding the products.

Plaintiff was unaware of the dangers as Defendants provided ineffective and inadequate warnings and instructions.

46. Defendants' product were defective due to inadequate post-marketing warning and instructions, and/or inadequate testing and studies, and/or inadequate reporting regarding the results.

47. The defective and unreasonably dangerous conditions discussed herein existed when the products left Defendants' control. They existed when the Defendants sold the products. They existed when the Plaintiff received them. They were specifically known to Defendants and as to the infusion sets, had been the subject of recall since December 23, 2016, as was known to all of the Defendants prior to the Plaintiff's injury on February 24, 2017.

48. Defendants' failure of said sets prior to September 2017, showed a willful, wanton, and malicious want of care which raises the presumption of indifference to consequences. Specifically:

  a. Defendants had a continuing duty to ensure that the products they provided were safe and used correctly through proper design, testing, research, adequate instruction, post-market surveillance, and appropriate modifications;

  b. Defendants had a duty to anticipate the environment in which the products would be used and to design against reasonably foreseeable risk attending the products' use in that setting, including misuse or alteration;

  c. Defendants had a continuing duty to give an adequate warning of known or reasonably foreseeable dangers arising from the use of their products;

  d. Defendant had a continuing duty to assure the products they provided were properly labeled and true to the representations made by Defendants;

12

49.     Defendants' products were defective in light of the dangers posed by their respective design and the likelihood of those avoidable dangers. Defendants' products were defective because the inherent risk of harm in Defendants' products' design outweighed the utility and benefits of the products.

50.     Defendants' products were defective because reasonably cost-effective and feasible state-of-the-art alternatives existed at the time that would not have undermined the products' usefulness. Defendants were aware of effective substitutes for the products. The gravity and likelihood of dangers posed by the products' designs outweighed the feasibility, cost, and adverse consequences to the products' function of a safer alternative designs that Defendants reasonably should have adopted.

51.     There were safer alternative designs that would have prevented or significantly reduced the risk of injury. It was reasonable as well as economically and technologically feasible at the time the products left the Defendants' control by the application of existing or reasonably achievable scientific knowledge. Plaintiff would show that both the pump and the infusion sets in question were in the same condition when she received them as when the left the Defendants' and they were used in accordance with the Defendants' instructions.

52.     As a direct and proximate cause of the design, manufacture and marketing defects and the Defendants' conduct alleged herein, Plaintiff sustained injuries and damages for which a cause of action is hereby stated.

**FOR A SECOND CAUSE OF ACTION – NEGLIGENCE**

53.     The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

13

54. At all times relevant to this Complaint, Defendants knew or reasonably should have known that their products were unreasonably dangerous and defective when used as designed and directed.

55. Defendants had a duty to exercise reasonable care, and to comply with the then existing standard of care, in the design, testing, research, development, packaging, distribution, promotion, marketing, advertising, instruction and sale of their products, individually and collectively, deviated from reasonable and safe practices in the following ways, by:

    a. Designing products defective in design and warnings/instructions;

    b. Failing to conduct pre and post market safety tests and studies;

    c. Failing to collect, analyze and report available data regarding the use of Defendants' products;

    d. Failing to conduct adequate post-market monitoring and surveillance;

    e. Failing to include adequate warnings about and/or instructions;

    f. Failing to include adequate warnings and/or proper instructions regarding proper uses of the products;

    g. Failing to inform users that Defendants had not adequately tested or researched the product to determine its safety and risks;

    h. Failing to educate and instruct user about the unique characteristics of their products and proper way to use them;

    i. Failing to implement and execute corrective and preventative actions to eliminate injuries;

    j. Continuing to promote and market the products despite ongoing failures

and known defects, and in the case of the Pro Set infusion sets, recalls by their co-manufacturer on December 23, 2016.

56. Had Defendants designed safe products and/or undertaken the tests, studies, and steps described herein, the injuries and damages complained of would not have occurred.

57. Defendants held themselves out as experts and specialists and therefore possessed a higher degree of skill and learning.

58. Defendants' products were not fit for the ordinary purpose for which such goods were used. They were unmerchantable when used as directed and defective in design, and the Defendants' failure to provide adequate warnings and instructions also resulted in said products being unreasonably dangerous. Defendants' products were dangerous to an extent beyond the expectations of ordinary consumers with common knowledge of the product's characteristics, including Mara Schwartz.

59. Injuries and damages sustained by the Plaintiff, Mara Schwartz, were both proximately caused and a reasonably foreseeable result of Defendants' products and conduct.

60. Defendants are bound for the care of their agents, servants, employees, officers and directors for the neglect of same. Defendants are liable for the conduct of their agents, servants, employees, officers and directors committed in the course of the activities on behalf of and in furtherance of the companies. Defendants are liable for their agents, employees, officers and directors conduct attempting to advance Defendants' business. Defendants expressly and impliedly authorized and ratified the conduct of their agents, servants, employees, officers and directors. Defendants received significant benefits as a result of their agents', employees', servants', officers' and directors' conduct.

61. Defendants' conduct showed willful, wanton, malicious want of care that raises the presumption of conscious indifference to the consequences. Defendants' wrongdoing constitutes gross negligence and said gross negligence proximately caused the injury to the Plaintiff and damages sustained as a result thereof.

### FOR A THIRD CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

62. The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein, again.

63. The Defendants represented and warranted to the Plaintiff that it's Medtronic MiniMed Infusion Sets and MiniMed 630G (MMT01715) Insulin Pump were safe for use in accordance with the Defendants' protocols. Said representations were in the form of marketing materials, device information and product materials provided to Mara Schwartz. Mara Schwartz justifiably relied on said representations and express warranties in electing to use said product.

64. The Medtronic MiniMed Infusion Sets and MiniMed 630G (MMT01715) Insulin Pump at issue did not conform to Defendants' express representations and warranties.

65. At all relevant times, said products did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

66. At all relevant times, said products did not perform in accordance with the Defendants' representations.

67. As a direct and proximate consequence of the Defendants' conduct, the Plaintiff sustained injuries and was damaged. Plaintiff hereby asserts a claim for breach of express warranty pursuant to applicable South Carolina law.

## FOR A FOURTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY

68. The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

69. By designing, marketing and selling the products at issue, the Defendants impliedly warranted to the Plaintiff that said products were merchantable and fit for ordinary use.

70. Defendants' products were not fit for the ordinary purposes for which such goods are used. They were unmerchantable when used as directed and defective in design, and the Defendants' failure to provide adequate warnings and instructions also resulted in said products being unreasonably dangerous. Defendants' products were dangerous to an extent beyond the expectations of ordinary consumers with common knowledge of the products' characteristics, including Mara Schwartz.

71. Defendants breached their implied warranty because the products were not safe, adequately packaged and labeled, did not conform to the representations Defendants made. They were not properly usable according to the labeling and instructions provided.

72. The Defendants' breaches of implied warranties, pursuant to South Carolina law, proximately resulted in the damages sustained by the Plaintiff.

## DAMAGES AS TO ALL CAUSES OF ACTION

73. The Plaintiff was injured as a direct and proximate result of the conduct and breaches of the Defendants, as aforesaid, for which compensation is required. Specifically, the Defendants products caused the Plaintiff to experience extreme hypoglycemia, seizures, and rhabdomyolysis, along with orthopaedic injury, neurological injury and PTSD. Plaintiff is seeking monetary damages in the form of:

   a. Damages for past medical, hospital and drug bills;

b. Damages for future medical, hospital and drug bills;

c. Damages for disfigurement, impairment and/or disability;

d. Damages for past and future mental anguish and emotional distress;

e. Damages for physical pain and suffering;

f. Damages for loss of enjoyment of life;

g. Damages for all other losses, both economic and intangible, arising from the injuries as set out herein, all of which were proximately caused by the act/or omissions of the Defendants;

h. Any other relief which the Court deems just and proper under the circumstances.

74. The Plaintiff reserves the right to prove the amount of damages at trial, in an amount to be determined by the jury.

75. As set forth hereinabove, the Defendants' conduct exhibited gross negligence and a willful, wanton and reckless disregard for the safety of the Plaintiff and others. As a result of the Defendants conduct, alleged herein, they are liable for punitive damages and attorney's fees, all litigation expenses and associated costs of litigation, and any other damages allowed by South Carolina law.

76. Plaintiff prays that exemplary damages be assessed against the Defendants in an amount sufficient to punish the Defendants for their wrongful conduct as well as deter like conduct in the future, and to serve as an example and warning to others, so as to encourage the Defendants and other companies to have due and proper regard for the rights of consumers and to protect the general public from future wrongdoing, pursuant to South Carolina law.

WHEREFORE, the Plaintiff, Mara Schwartz demands judgment from the Defendants, and respectfully requests an Order from this Court awarding damages and compensation for:

1. An award of actual, consequential and incidental damages in such amounts as are sufficient to compensate in full the Plaintiff for her losses actually incurred as a result of the Defendants' wrongdoing;

2. An award of punitive damages in an amount adequate to punish the Defendants and deter similar conduct in the future;

3. An award of the Plaintiff's costs and expenses incurred in connection with this action, including attorney's fees, expert witness fees and all other costs herein;

4. Granting such other and further relief as the Court deems just and proper, including any extraordinary equitable or injunctive relief as permitted by law, equity or statutory provisions, as the Court deems proper to provide the Plaintiff with an effective remedy for the damages caused and injuries suffered as a result of the Defendants' wrongdoing.

Respectfully submitted,

**NICHOLSON MEREDITH & ANDERSON**

<u>*s/Lena Y. Meredith*</u>
Lena Y. Meredith, Esq., Bar No.: 6690
William H. Nicholson, III, Fed. Bar No. 5937
Attorneys for the Plaintiff
109 W. Court Avenue
P. O. Box 457
Greenwood, SC  29648
(864) 229-7241 (Tel.)
(864) 229-2739 (Fax)
lena@nicholsonmeredith.com
billy@nicholsonmeredith.com

AND

19

                           **THE HODGES LAW FIRM, LLC**

                           ***s/ Andrew M. Hodges***
                           Andrew M. Hodges, Esquire Fed. Bar No.: 13201
                           Attorney for the Plaintiff
                           109 W. Court Avenue
                           P.O. Box 3094
                           Greenwood, SC 29648
                           (864) 538-4114 (Tel.)
                           (864) 538-4226 (Fax)
                           ahodges@hodges-law-firm.com

February 21, 2020

Greenwood, South Carolina